IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

UNITED STATES OF AMERICA,           *

     Plaintiff,           *

     v.           *           Civil No.: WDQ-13-2754

                 *

$50,000.00 in U.S. CURRENCY,           *

     Defendant.           *

*    *    *    *    *    *    *    *    *    *    *    *    *

MEMORANDUM OPINION

The government seeks forfeiture of $50,000.00 ("the currency") seized from Joe E. Avetia[1] during a traffic stop. Pending is the government's unopposed motion to dismiss Avetia's *pro se* verified claim[2] and answer for failure to comply with Rule G(5).[3] No hearing is necessary. Local Rule 105.6 (D. Md. 2011). For the following reasons, the motion will be denied.

---

[1] Avetia's name is spelled "Avitia" in the government's complaint and in the verified claim. ECF Nos. 1, 4. However, Avetia is listed on the docket as "Joe Avetia" and spells his name "Avetia" in the answer. ECF No. 5. The Court will use the spelling reflected on the docket and in the answer.

[2] Avetia is appearing *pro se*, and no attorney has entered an appearance for him. He has directed that his mail be delivered "c/o Stanton Bloom, P.C," but Bloom has not made any filings on his behalf. *See* ECF Nos. 4 at 1-2, 5 at 3.

[3] Fed. R. Civ. Proc. G(5) (Supp).

I.  Background[4]

In March 2013, Trainor was told by law enforcement officers that Avetia[5] transported marijuana between Tucson, Arizona and Philadelphia.  ECF No. 1 at 6.  He was also told that Avetia was in the Philadelphia area to pick up payment for a previous shipment of marijuana and was driving a 2008 Freightliner tractor trailer registered in Arizona.  *Id.*  Based on his training and experience, Trainor was aware that drug traffickers often use truck drivers to ship large quantities of marijuana across the United States.  *Id.*

On March 1, 2013, Trainor and other officers began surveillance on Avetia at his hotel in Pennsylvania.  *Id.* at 6-7.  On March 3, 2013, they observed a meeting between Avetia and two other males who were driving a pickup truck registered in Pennsylvania.  *Id.* at 7.  The officers discovered that the truck was registered to Pierre D. Williams, who has previous arrests and convictions in Pennsylvania for murder, assault, drug, and firearms crimes.  *Id.*  During the meeting, the males gave Avetia a paper bag containing a rectangular object.  *Id.*

---

[4] The facts are from the government's complaint and the declaration of Special Agent Patrick J. Trainor of the Drug Enforcement Administration ("DEA"), which is incorporated into the complaint.  ECF No. 1.

[5] Avetia was arrested in July 1994 for marijuana distribution and was arrested in April 1996 for marijuana possession.  ECF No. 1 at 9.

On March 4, 2013, Avetia left his hotel in his tractor trailer. *Id*. DEA special agents asked the Maryland State Police to stop Avetia's trailer. *Id*. Two State Troopers conducted a traffic stop of Avetia for speeding. *Id*. As a trooper approached the tractor trailer, Avetia left the trailer. *Id*. at 8. He showed the trooper a hotel receipt--even though his trailer was equipped with beds--and offered to show the officer the contents of the trailer. *Id*. Avetia also acted very nervous in response to the trooper's questions about his trip. *Id*. Avetia told the trooper that he was driving to Brownsville, Texas, which the trooper knew is one of the largest entry points for narcotics in the United States. *Id*.

The troopers found Avetia's behavior suspicious and requested assistance from another officer and his drug detection dog to conduct a canine sniff of Avetia's trailer. *See id*. The dog positively alerted for the presence of narcotics. *Id*. Avetia told the troopers that he had $50,000 in a bag inside the trailer. *Id*. The currency was packaged in multiple bundles and secured by varying colors of rubber bands. *Id*. Avetia told the troopers that he had obtained the currency during his travels from buying and selling trailers and parts for tractors, and that he bundled it to make it easier to count. *Id*. at 8-9.

The troopers seized the currency and transferred it to the DEA. *Id*. at 9. Trainor brought the currency to the DEA

3

Philadelphia Division, where another dog sniffed it and positively alerted for the presence of drugs. *Id.*

On September 19, 2013, the government filed a forfeiture complaint, asserting that the currency is subject to forfeiture under 21 U.S.C. § 881(a)(6), because it "was money furnished and intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act [("CSA")][6]." *Id.* at 4. On October 22, 2013, Avetia, *pro se*, filed a verified claim for the currency. ECF No. 4. In his claim, Avetia states that he "claims a 100% interest in the $50,000.00," which "was derived from a legitimate source and was not the product of any illegal activity." *Id.* at 1. He also notes that he possessed the currency--of which he is the "innocent owner"--legally. *Id.* at 2. He states that he "owns his own business and has two trucks and two trailers which he utilizes to transport produce [and] obtains funds from buying and selling truck parts." *Id.*

On October 22, 2013, Avetia answered the complaint. ECF No. 5. On October 29, 2013, the government wrote to Avetia to inform him that his claim "does not conform to the requirements" of Rule G(5). ECF No. 6-1 at 1. The government offered to give him a 21-day extension to file a conforming claim. *Id.* On December 17, 2013, the government moved to dismiss the claim and answer for failure to comply with Rule G(5). ECF No. 6. Avetia

---

[6] 21 U.S.C. § 801 *et seq.*

did not file an amended claim or respond to the motion to dismiss.[7]

II.   Analysis

A. Standing

The government contends that Avetia lacks statutory standing to contest the forfeiture because his claim and answer do not comply with the pleading requirements of Rule G(5).  ECF No. 6 at 3-4.  Civil forfeiture claimants bear the burden of establishing Article III and statutory standing.  *See United States v. $7,000.00 in U.S. Currency*, 583 F. Supp. 2d 725, 729 (M.D.N.C. 2008); *United States v. $487,825.00 in U.S. Currency*, 484 F.3d 662, 664 (3d Cir. 2007).

To establish Article III standing, the "claimant must have a colorable ownership, possessory or security interest in at least a portion of the defendant property." *United States v. Munson*, 477 F. App'x 57, 62 (4th Cir. 2012) *cert. denied*, 133 S. Ct. 315, 184 L. Ed. 2d 187 (2012).[8]  Statutory standing requires

---

[7] It is not apparent from the docket that Avetia received notice of the government's motion. For example, there is no indication that Avetia was mailed a Rule 12/56 letter notifying him of the motion.  Also, the government's motion does not state that it served him with a copy of its motion, although the government's October 29, 2013 letter warned Avetia that it would file a motion to strike if he did not amend his claim.  ECF No. 6-1 at 1.

[8] As the alleged "owner" of the currency seized from his possession, Avetia has constitutional standing. *See, e.g.*, *$7,000.00 in U.S. Currency*, 583 F. Supp. 2d at 731 ("Courts

the claimant's compliance with Rule G(5) of the Supplemental
Rules for Admiralty or Maritime Claims and Asset Forfeiture
Actions and 18 U.S.C. § 983(a)(4)(A). *See United States v.*
*$119,030.00 in U.S. Currency*, 955 F. Supp. 2d 569, 577 (W.D. Va.
2013); *United States v. $12,126.00 in U.S. Currency,* 337 Fed.
App'x 818, 820 (11th Cir. 2009). Under Supplemental Rule
G(8)(c), the government may move to strike a claim for lack of
statutory standing.

Supplemental Rule G(5) requires that the claim: (1)
"identify the specific property claimed;" (2) "identify the
claimant and state [his] interest in the property;" and (3) "be
signed by the claimant under penalty of perjury."[9] Strict
compliance with Rule G(5) is generally required, but the Court
may depart from it "in appropriate circumstances." *United*
*States v. 328 Pounds More or Less, of Wild Am. Ginseng*, 347 F.

---

generally do not deny standing to a claimant who is either the
colorable owner of the [property] or who has any colorable
possessory interest in it.") (*quoting United States v. Contents*
*of Accounts Nos. 3034504504 and 144-07143*, 971 F.2d 974, 985 (3d
Cir. 1992) (internal quotations omitted)).

[9] Avetia signed the claim under penalty of perjury. *See* ECF No.
4 at 3. Rule G(5) also requires that the claim "be served on
the government attorney" and sets time limits for filing the
claim and answer. The government does not assert that service
was improper or that the claim or answer was untimely filed.

Supp. 2d 241, 248 (W.D.N.C. 2004) (*quoting United States v. Amiel,* 995 F.2d 367, 371 (2d Cir. 1993)).[10]

The Rule is silent about the information necessary to state an interest. The purpose of the requirement is to "endow the government with knowledge of ownership." *See United States v. $25,790.00 in U.S. Currency,* 2010 WL 2671754, at *3 (D. Md. July 2, 2010). Some cases have held that a simple claim of ownership is sufficient.[11] Others--including many district court cases in the Fourth Circuit--have required more than the claimant's "bald assertion of ownership."[12]

Under either standard, Avetia's claim is sufficient. The government asserts that Avetia has failed to sufficiently state his interest in the currency, because he does not specify how he came to possess it. *See* ECF No. 6 at 2, 5-9. The government

---

[10] The purpose of the verified claim is to "ensure[] that all potential claimants come forward quickly and reduce[] the danger of false claims." *United States v. $67,775.00 in U.S. Currency,* CIV.A. WMN-10-3410, 2011 WL 4711893, at *2 (D. Md. Oct. 5, 2011).

[11] *See, e.g., United States v. Funds from Prudential Sec.,* 300 F. Supp. 2d 99, 106 (D.D.C. 2004) (collecting cases supporting the proposition that "an affirmation or statement under oath that one is the owner of the seized property [is] sufficient to establish [statutory] standing"); *United States v. $196,969.00 U.S. Currency,* 719 F.3d 644, 646 (7th Cir. 2013) (plain language of the rule only requires a "bald assertion").

[12] *See, e.g., United States v. $104,250.00 in U.S. Currency,* 947 F. Supp. 2d 560, 562-63 (D. Md. 2013) (collecting Fourth Circuit district court cases requiring more than a "bald assertion of ownership" to establish statutory standing).

contends that Avetia's claim "merely . . . claims ownership,"
and "says that he earns money - but not necessarily the seized
money - from driving a truck and selling truck parts."  *Id*.
However, construed liberally,[13] Avetia's claim contains more than
a "bald assertion of ownership."  In paragraph six of his claim,
Avetia states that he "possessed the currency legally," that he
"owns his own business," and that "he obtains funds from buying
and selling truck parts."  ECF No. 4 at 2.  From this, the Court
can infer that Avetia is referring to the seized "legally
possessed" currency as "funds" he obtained "from buying and
selling truck parts" during the course of his business.  This
inference appears even more reasonable when coupled with the
government's complaint, which states that the funds were seized
from Avetia's possession and that Avetia told the troopers at
the traffic stop that he obtained the currency from buying and
selling tractor parts and trailers.  *See* ECF No. 1 at 8-9.

---

[13] *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197,
2200, 167 L. Ed. 2d 1081 (2007) (internal quotations and
citations omitted)). ("A document filed *pro se* is to be
liberally construed, and a *pro se* complaint, however inartfully
pleaded, must be held to less stringent standards than formal
pleadings drafted by lawyers."); *Funds From Prudential Sec.*, 300
F. Supp. 2d at 104-05 (liberal construction of *pro se* claim in a
forfeiture case is appropriate when "the underlying goals of
Rule [G(5)] are not frustrated to ensure that courts decide
controversies on the merits"); *cf. United States v. Thach*, CRIM.
DKC 12-624, 2013 WL 5177311, at *3 (D. Md. Sept. 12, 2013)
(crediting claimant's good faith--albeit imperfect--compliance
with the timing requirements of Rule G(5), in part, because he
was proceeding *pro se*).

Accordingly, because the claim sufficiently states Avetia's
interest in the currency--and otherwise complies with the
procedural requirements of Rule G(5)--Avetia has statutory
standing to assert his claim to the currency.[14]  *Cf. Degen v.
United States*, 517 U.S. 820, 828, 116 S. Ct. 1777, 1783, 135 L.
Ed. 2d 102 (1996) (noting in the forfeiture claims context that
"the dignity of a court derives from the respect accorded its
judgments.  That respect is eroded, not enhanced, by too free a
recourse to rules foreclosing consideration of claims on the

---

[14] *See United States v. $4,629.00 in U.S. Currency*, 359 F. Supp.
2d 504, 507 (W.D. Va. 2005) (liberally construed *pro se*
claim that asserted that the defendant currency "was earned during
[the claimant's] employment" was sufficient to state an interest
in the seized property); *United States v. $154,853.00 in U.S.
Currency*, 744 F.3d 559, 564 (8th Cir. 2014) (same for counseled
claimant); *Funds From Prudential Sec.*, 300 F. Supp. 2d at 108
(allegations in government complaint that funds were seized from
claimant's bank account, coupled with *pro se* claimant's
allegations of ownership, satisfied "either line of precedent");
*cf. United States v. $18,690.00 in U.S. Currency*, 5:13CV00026,
2014 WL 1379914, at *1, *3 (W.D. Va. Apr. 8, 2014) (denying
claim that made only a "bald assertion of ownership," in part,
because claimant was not "a *pro se* litigant putting forth a good
faith effort to interpret a vast array of federal statutes,
rules, and case law"); *but see $104,250.00 in U.S. Currency*, 947
F. Supp. 2d at 565-66 (counseled claimant who stated that seized
currency was derived from "personal investments in the
entertainment industry, and proceeds of my mother's estate"
insufficiently stated her interest in the property); *United
States v. $134,750 U.S. Currency*, RWT 09CV1513, 2010 WL 1741359,
at *3 (D. Md. Apr. 28, 2010) (requiring *pro se* claimant to amend
his claim "to provide detail as to how he obtained possession of
the currency, including, but not limited to, the person(s) from
whom he received the currency, the date of receipt, the place of
the receipt, and a description of the transaction which
generated the currency").

merits."). The government's motion to dismiss Avetia's claim will be denied.[15]

B. Sufficiency of Answer

The government asserts that Avetia's answer "should be dismissed for failure to comply with Rule G(5)(b)," because the answer does not respond to the factual allegations in Trainor's declaration "in a point-by-point format." *See* ECF No. 6 at 10-11.

Within 21 days of filing a claim, the claimant must file an answer to the complaint or a motion under Federal Rule of Civil Procedure 12. *See* Rule G(5)(b). The purpose of the answer is "to set forth in detail the claims and defenses which the claimant believes support the assertion of his claim to the property." *$4,629 in U.S. Currency*, 359 F. Supp. 2d at 507. Unless the claimant files an answer, the Government may have to "guess at which allegations in the complaint are undisputed or irrelevant . . . and which will have to be proven by a

---

[15] The government notes that "the circumstances of the seizure are highly suspicious" for various reasons and suggest that Avetia "was merely acting as a courier for a drug dealer and had no true interest in the seized currency." ECF No. 6 at 9. Although these arguments may ultimately support the government's forfeiture claim on the merits, they do not bear on whether Avetia has sufficiently alleged an interest in the currency to survive the government's motion to dismiss for failure to comply with the procedural requirements of Rule G(5). *Cf. United States v. U.S. Currency in the Amount of $2,857.00*, 754 F.2d 208, 213 (7th Cir. 1985) ("Once the procedural requirements of Rule [G(5)] are met, a claimant has standing to defend the forfeiture.").

preponderance of the evidence." *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 664 F. Supp. 2d 97, 102 (D.D.C. 2009).

Federal Rule of Civil Procedure 8--which governs pleading requirements in civil actions--applies to civil forfeiture proceedings. *See United States v. $67,775.00 in U.S. Currency*, 278 F.R.D. 345, 346 (D. Md. 2012) (*citing* Rule G(1) ("To the extent that this rule does not address an issue, Supplemental Rules C and E and the Federal Rules of Civil Procedure also apply.")) Rule 8(b)(1) provides that an answer must "state in short and plain terms its defenses to each claim asserted against it," and "admit or deny the allegations asserted against it by an opposing party." The "denial[s] must fairly respond to the substance of the allegation." Rule 8(b)(2). Rule 8(e) requires the Court to construe pleadings "so as to do justice."

The government's complaint has eight numbered paragraphs. Paragraph eight incorporates Trainor's declaration, which has several paragraphs that state the facts of the currency seizure. ECF No. 1. Avetia's answer also contains eight numbered paragraphs. ECF No. 4. The first seven paragraphs address each of the corresponding paragraphs in the government's complaint in some detail. He denies some allegations, admits others, and asserts several defenses, including that the money was not connected to a violation of the CSA and thus not subject to

11

forfeiture, that there was no probable cause for the forfeiture, and that the government has no evidence that he committed any crimes. *See id.* at 1-2.  Paragraph eight does not respond to each paragraph of the declaration, but denies allegations that he violated the CSA and that the currency "was obtained in an illegal or criminal matter." *See id.* at 2.  He also states that he is an innocent owner and "he legitimately possessed the money as a result of his trucking business." *Id.*  Liberally construed,[16] this answer is sufficient to notify the government of the contested factual allegations, and the claims and defenses that Avetia will assert. *See $4,629.00 in U.S. Currency*, 359 F. Supp. 2d at 507 (*pro se* filing which "la[id] out his claim that the currency was earned during his employment and also asserts certain defenses including a lack of timeliness of the government's notice and the insufficiency of the government's proof" satisfied the requirements of an answer).[17]

---

[16] *See supra* note 13; *United States v. $88,029.08, More or Less, in U.S. Currency*, CIV.A. 2:10-1087, 2011 WL 1399076, at *2 (S.D.W. Va. Apr. 12, 2011) (liberally construing *pro se* claimant's answer in forfeiture proceeding).

[17] *See also* Charles A. Wright, Arthur R. Miller *et al.*, Denials—In General, 5 Fed. Prac. & Proc. Civ. § 1261 (3d ed.) ("As is true of [complaints], 'plain notice' of the issues being raised by the defendant is all that is required at the pleading stage by the federal rules; the parties are provided with adequate discovery and pretrial procedures to develop in detail the facts pertinent to their various claims and defenses[,] and the pleadings are not intended to carry that burden. Thus, responsive pleadings are subject to the Rule 8(e) standard of

III.    Conclusion

    For the reasons stated above, the government's motion to

dismiss will be denied.

_____       _____
Date                                        William D. Quarles, Jr.
                                            United States District Judge

---

terseness and the Rule 8(f) directive that pleadings be
construed so 'as to do substantial justice.'"); *cf. United
States v. $10,290.00 more or less, in U.S. Currency*, 2:12-CV-
04862, 2014 WL 1017200, at *4-*5 (S.D.W. Va. Mar. 14, 2014)
(setting aside entry of default in forfeiture case, in part,
because claimant's answer asserted a meritorious defense--
"general denials and assertions regarding the defendant
property's connection to non-criminal conduct"); *but see
$67,775.00 in U.S. Currency*, 278 F.R.D. at 346 (deeming
allegations in government's complaint admitted when counseled
claimants persisted in filing an answer that was a "blanket
denial" of the government's allegations; claimants failed to
comply with Court's order to "specifically admit or deny each of
the enumerated factual allegations" in the complaint and
declaration).